UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY D. ARONSON, ET AL.                          :
                                                 :
    Plaintiffs,                                  :
                                                 :
    v.                                           :       Civ. A. Nos. 1:11-CV-11492-NMG
                                                 :                    1:11-CV-11515-NMG
ADVANCED CELL TECHNOLOGY, INC., ET AL., :
                                                 :       **LEAVE TO FILE GRANTED ON 2/22/12**
    Defendants.                                  :
                                                 :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY D. ARONSON, ET AL.                          :
                                                 :
    Plaintiffs,                                  :
                                                 :
    v.                                           :
                                                 :
ADVANCED CELL TECHNOLOGY, INC., ET AL., :
                                                 :
    Defendants.                                  :
                                                 :
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT OF JOHN S. GORTON, AS TRUSTEE OF THE JOHN S.
<u>GORTON SEPARATE PROPERTY TRUST, DATED 3/3/1993</u>**

**I.     Gorton has conceded that his securities-fraud claim concerning the Woodward warrant is barred by the statute of repose.**[1]

The five-year statute of repose for securities-fraud claims gives defendants "total repose after five years." Merck & Co., Inc. v. Reynolds, ___ U.S. ___, 130 S. Ct. 1784, 1797 (2010).[2] See In re Stone & Webster, Inc. Secs. Litig., 2006 WL 1738348, at *3 (D. Mass. Jun. 23, 2006) (statute of repose is not subject to tolling, and "may expire before the plaintiffs discover the fraud"). Gorton argues that the five-year period did not begin to run until September 27, 2006. (ECF No. 23 at 18.) Gorton must, therefore, concede that he had to assert his claim concerning the Woodward warrant not later than September 27, 2011.

Gorton missed that deadline. While he brought suit on August 25, 2011, he did so based exclusively on the Engstrom warrant. (ECF No. 1.)[3] It was not until November 2, 2011, when he filed his Amended Complaint (ECF No. 4), that Gorton introduced the Woodward warrant to this litigation. The Woodward warrant is a separate and distinct transaction unrelated to the Engstrom warrant. (Id. at ¶¶ 52-67.) As such, Gorton's amendment does not relate back to the August 25, 2011, filing date. Fed. R. Civ. P. 15(c)(1)(B) (relation back permitted only where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading"); O'Loughlin v. Nat'l R.R. Pass. Corp., 928 F.2d

---

[1] Pursuant to this Court's paperless orders dated April 4, 2012, Aronson v. Advanced Cell Technology, Inc. (Civ. A. No. 1:11-cv-11492-NMG), and John S. Gorton, As Trustee of the John S. Gorton Separate Property Trust, Dated 3/3/1993 v. Advanced Cell Technology, Inc. (Civ. A. No. 1:11-cv-11515-NMG), have been consolidated for all purposes. The Court further ordered that the Gorton action be closed and that all future filings be made in the Aronson action. On February 22, 2012, prior to consolidating the actions, the Court entered a paperless scheduling order in the Gorton action permitting this reply memorandum.

[2] Internal citations and quotations are omitted from this reply unless otherwise noted.

[3] All ECF document references in this reply are to the Gorton action (Civ. A. No. 1:11-cv-11515-NMG).

24, 26 (1st Cir. 1991) ("this court has refused to allow an amendment to assert a claim which was not even suggested in the original complaint").

Accordingly, having been raised for the first time on November 2, 2011, Gorton's claim concerning the Woodward warrant is now time-barred.

**II.     Gorton's securities-fraud claim concerning the Engstrom Warrant is barred by the statute of limitations.**

Gorton's claim concerning the Engstrom warrant accrued more than two years before he filed suit on August 25, 2011.[4]  In a California lawsuit that he filed against ACT on October 1, 2007, Gorton's interrogatory answers (ECF No. 20 at 17-18; ECF No. 20-1, Ex. 4 (p. 33 of 56)) declared that ACT breached his Warrant to Purchase Securities (ECF No. 4-1, Ex. B (pp. 10-18 of 18) (the "Warrant")) by issuing shares to Engstrom in October 2005 and not making an appropriate adjustment under the Warrant.  He submitted those interrogatory answers on March 4, 2009.  (ECF No. 20-1, Ex. 4 (p. 35 of 56).)  Thus, nearly four years before he filed this suit, Gorton filed suit in California alleging that ACT had failed to adjust the stock purchase price and number of shares purchasable under his Warrant in light of the Engstrom warrant; and more than two years before he filed this suit, he served discovery responses asserting a breach of his Warrant based on ACT's issuance of shares to Engstrom.[5]

These undisputed facts establish as a matter of law that, had he diligently investigated, Gorton would have discovered every alleged fact needed to bring his present claim concerning the Engstrom warrant, including scienter, more than two years before he filed suit on August 25,

---

[4] Gorton's fraud claim is subject to a two-year statute of limitations.  (See ECF No. 20 at 16-17.) The Court may determine the accrual date as a matter of law (id. at 16 n.12), which Gorton does not dispute (see ECF No. 23 at 16-17).

[5] Gorton disputes neither his filing of suit in California nor the authenticity of his interrogatory answers.  (See ECF No. 23 at 16-17.)  Nor does he argue that the Court should disregard his interrogatory answers in deciding the present Motion.  (Id.)

2011.  There was more than enough time for Gorton to conduct an investigation and discover the

relevant "facts" over the 694 days between at least October 1, 2007, when Gorton filed suit in

California, and August 25, 2009, two years before he filed this suit.

Gorton has no valid response.  He does not even contest that, with diligence, he would

have discovered (or that he did discover) the alleged facts relevant to his current lawsuit before

August 25, 2009, more than two years before he filed this suit.  (ECF No. 23 at 16-17.)  This

concession, sub silentio, is dispositive.

Yet Gorton persists, arguing, "[u]nder the standards set forth in the Merck case, whether

or not he should have discovered facts to support [his] claim is not material."  (ECF No. 23 at

16.)  Gorton is wrong.  The statute of limitations begins to run when a reasonably diligent

plaintiff would have discovered the facts constituting the violation:

> [T]he limitations period does not begin to run until the plaintiff thereafter
> discovers or a reasonably diligent plaintiff would have discovered the facts
> constituting the violation, including scienter – irrespective of whether the actual
> plaintiff undertook a reasonably diligent investigation.

Merck, 130 S. Ct. at 1798 (emphasis added).

Gorton also argues that one just cannot know for sure whether his California lawsuit

concerned the Engstrom warrant.  (ECF No. 23 at 17.)  This argument is absurd.  Gorton's

interrogatory answers in that litigation identified the following transaction as a "confirmed

breach" of his Warrant: "'On October 3, 2005, we [ACT] issued 90,566 shares of common stock

to a former officer of the company pursuant to a cashless exercise of a 100,000 share warrant

exercisable at $0.25 per share.'"  (ECF No. 20-1, Ex. 4 (p. 37 of 56).)  The Amended Complaint

alleges that ACT's issuance of 90,566 shares on October 3, 2005, was done under the Engstrom

warrant.  (ECF No. 4 at ¶ 63(i) (referring to Engstrom warrant being executed in October 2005,

resulting in the issuance of 90,566 shares).)[6]

### III.     Gorton has failed to plead a misrepresentation or omission by ACT.

The premise of Gorton's securities-fraud claim is that ACT "issued" warrants to

Engstrom and Woodward during his Pricing Period (May 1, 2005, to January 15, 2009), and

failed to adjust his Warrant properly.  This claim would fail even if it were timely, because the

Amended Complaint does not give rise to a plausible contention that warrants triggering an

adjustment were issued during the Pricing Period.[7]  (ECF No. 20 at 8-11.)

#### A.     The Engstrom warrant.

Gorton argues that the Engstrom warrant was issued on May 9, 2005.[8]  He says that was

the date when the warrant was physically delivered to Engstrom; that the warrant was in escrow

until then; and that the warrant could not have been "issued" if it was held in escrow.  (ECF No.

23 at 3-7.)  This argument, made without legal support, fails for several reasons.

---

[6] Gorton bases this allegation on ACT's Form 10-KSB for the period ending December 31, 2005. (ECF No. 4 at ¶ 63(i); see ECF No. 4-4, Ex. R (pp. 12-13 of 17).)  That filing, made on March 31, 2006, ties the October 3, 2005, issuance of 90,566 shares to the November 30, 2004, Engstrom warrant.  (ACT Form 10-KSB for the period ending December 31, 2005, the relevant parts of which are attached hereto as **Exhibit 5**, pp. 37, 72, 92.)

[7] Gorton argues that ACT is asking the Court to construe the inferences of the Amended Complaint in its favor.  (ECF No. 23 at 2.)  That is not so.  ACT asks the Court to determine whether Gorton has alleged a plausible claim for relief under Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), and to accord no deference whatsoever to the unreasonable and unsubstantiated inferences that Gorton urges upon this Court.  Ayanna v. Dechert LLP, ___ F. Supp.2d ___, 2012 WL 39580, at *2 (D. Mass. Jan. 6, 2012) ("[T]he Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.") (emphasis added); Landry v. D'Alessandro, 316 F. Supp.2d 49, 60 (D. Mass. 2004) (requirement to construe allegations in plaintiff's favor does not mean the Court should credit unreasonable inferences).

[8] ACT has established that the Court may determine the date of issuance of the Engstrom warrant (and the Woodward warrant) as a matter of law based on the allegations and exhibits of the Amended Complaint.  (ECF No. 20 at 8 n.8.)  Gorton does not argue otherwise.  Based on Gorton's own pleading, these warrants were issued before the Pricing Period.

First: Gorton's assertion that May 9, 2005, was the date on which the Engstrom warrant was issued contradicts the Amended Complaint's allegation that April 1, 2005, was the Engstrom warrant's "<u>original issuance date</u>."  (ECF No. 4 at ¶ 57 (emphasis added).)

Second: The Amended Complaint nowhere alleges that the Engstrom warrant was held in escrow.  Gorton relies on a January 2005 settlement agreement between Engstrom and ACT (ECF No. 23 at 4), which was an exhibit to ACT's Motion to Dismiss (ECF No. 20-1, Ex. 1 (pp. 11-16 of 56)); it is not mentioned in the Amended Complaint, and, therefore, is not part of Gorton's pleading.

Third: Even if it were part of his pleading, Gorton has misstated the settlement agreement's terms.  It states that Engstrom's warrant would be held in escrow until April 1, 2005 (ECF No. 20-1, Ex. 1 (p. 12 of 56)), the effective date of that warrant, and the date that Gorton alleges was the "original issuance date" (ECF No. 4 at ¶ 57), not May 9, 2005.

Fourth: Exhibit M to the Amended Complaint states that a warrant was delivered to and received by Engstrom on April 29, 2005, <u>before</u> the start of Gorton's Pricing Period on May 1, 2005.  (ECF No. 4-3, Ex. M (p. 8 of 14).)  As an exhibit to Gorton's Amended Complaint, Exhibit M is "a part of th[at] pleading for all purposes," including ACT's Motion.  Fed. R. Civ. P. 10(c).

The only plausible inference to be drawn from the Amended Complaint is that ACT "issued" the Engstrom warrant before May 1, 2005.  The Amended Complaint demonstrates that all that occurred on May 9, 2005, was the re-dating of the signature page (from April 1, 2005, to November 30, 2004), and the re-sending of <u>the exact same warrant</u> with the new date to Engstrom.  The very same warrant had already been agreed upon, executed, delivered, and, as Gorton himself alleges, "issu[ed]" to Engstrom before May 1, 2005.  (ECF No. 4 at ¶ 57.)  Thus,

even under Gorton's physical-delivery theory, the Engstrom warrant was issued before the

Pricing Period.[9]

### B.      The Woodward warrant.

Gorton alleges that ACT issued a $0.10 warrant to Woodward on September 15, 2005,

during Gorton's Pricing Period, but failed to disclose it until November 2009, after the Pricing

Period.  (ECF No. 4 at ¶¶ 64-67.)

The Amended Complaint, however, fails to acknowledge that, in November 2005, ACT

disclosed that it had issued a warrant to Woodward on September 15, 2005, at the same per-share

price as that stated in Gorton's Warrant, or $2.20.  (ECF No. 20-1, Ex. 2 (p. 20 of 56).)  As

Gorton must concede – and apparently does concede (see ECF No. 23 at 7-10) – this $2.20

warrant would not have triggered an adjustment under his Warrant.

 The November 2005 SEC disclosure of a $2.20 warrant issued to Woodward is

consistent with the original Woodward warrant itself.[10]  (ECF No. 20-1, Ex. 3 (pp. 22-31 of 56).)

The per-share price of $2.20 is also consistent with what Gorton alleges to have been the market

---

[9] Gorton argues that the Engstrom warrant must have been "issued" on May 9, 2005, because it
was on that date that ACT sent the "revised" warrant to Engstrom.  (ECF No. 23 at 3-4, n.2.)
Yet, according to Gorton's Exhibit M, the warrant delivered to Engstrom on May 9, 2005, was
exactly the same as the warrant that had been previously executed and delivered to Engstrom
before the Pricing Period.  The only "revision" was to the date on the signature page, which
changed from April 1, 2005, to November 30, 2004 (dates that precede the Pricing Period), in
order to match Engstrom's date of termination from ACT.

[10]  Gorton seeks to avoid consideration of the $2.20 warrant, arguing that it was not filed with the
SEC and "may not be authentic."  (ECF No. 23 at 8 n.4.)  The Court may take judicial notice of
the $2.20 Woodward warrant because it is integral to the Amended Complaint – indeed, it is one
of the two transactions respecting which Gorton seeks relief; its status as an integral document
provides an independent basis for the Court to take judicial notice.  Clorox Co. Puerto Rico v.
Proctor & Gamble Comm'l Co., 228 F.3d 24, 32 (1st Cir. 2000).  Further, Gorton's musing that
it "may not be authentic" is insufficient.  Even if he had directly challenged the document's
authenticity (he has not), he failed to provide a genuine basis for such a challenge.

price of ACT stock on September 15, 2005.  (ECF No. 4 at ¶ 67(c).)  The only plausible

inferences consistent with the contemporaneous SEC disclosure and the text of the Woodward

warrant itself are that: (a) ACT issued a $2.20 warrant to Woodward in September 2005; and (b)

the November 2009 disclosure reflected amendments to that warrant's per-share price (from

$2.20 to $0.10) and termination date (from September 2010 to December 2014).  (ECF No. 20 at

10-11.)

Gorton, in substance, assails this interpretation because the 2009 SEC disclosure does not

contain the word "amendment."  (See ECF No. 23 at 8-9.)  The absence of that one word,

however, does not alter the fact that there are two disclosures concerning the same warrant, with

the first disclosing terms and the second disclosing amended terms.  The only reasonable

inference is that there was an amendment of the Woodward warrant.  There is no contrary

inference that can be drawn from the Amended Complaint, because it omits any mention of a

$2.20 warrant.

Gorton's failure to plead any facts concerning the $2.20 Woodward warrant or its

relationship to the $0.10 Woodward warrant leaves a pleading void that requires dismissal.

Ashcroft, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief."); S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) ("If the factual allegations in

the complaint are too meager, vague, or conclusory to remove the possibility of relief from the

realm of mere conjecture, the complaint is open to dismissal.").

Gorton attempts to reconcile the two disclosures by arguing in his Opposition that ACT

must have "backdated a change to the Woodward warrant," or that the 2005 disclosure of the

$2.20 warrant must have been "erroneous."  (ECF No. 23 at 8-9.)  But the Amended Complaint

supports neither argument; it does not even mention the $2.20 Woodward warrant.  Further,

because there is no mention of the $2.20 warrant in the Amended Complaint, there is no

allegation that the amended $0.10 warrant was issued during the Pricing Period, which is

necessary for Gorton to state a claim for relief.[11]

### C.      The alleged misrepresentation of September 27, 2006.

Gorton's Opposition appears to argue that his fraud claim is based principally on ACT's

alleged misrepresentation of September 27, 2006, which Gorton characterizes as "ACT's written

statement it was providing 'an explicit representation and warranty' that it had not issued any

securities at below $0.288 during the pricing period."  (ECF No. 23 at 12.)  Gorton's argument is

based on Exhibit K to the Amended Complaint, which is an alleged email from ACT's former

counsel to Gary Aronson (copied to Gorton) summarizing the terms of an alleged Release then

under consideration by the parties.  This argument has two primary flaws.

First: There are no facts alleged in the Amended Complaint that show ACT's counsel's

statement to have been false.  (ECF No. 20 at 8-11.)

Second: Gorton has failed to attach or plead the contents of the Release that is referenced

in, and was apparently attached to, Exhibit K.[12]  That Release is the document that purportedly

contains the alleged misrepresentation; the email from ACT's former counsel was merely one

---

[11] Gorton's failure to plead facts showing that either the Engstrom warrant or the amended
Woodward warrant was "issued" during his Pricing Period disposes of not only his securities-
fraud claim; it disposes of his breach-of-contract claim as well.  (See ECF No. 20 at 19.)

[12] If Gorton intends to rely on it, the exact content of the alleged Release is critical.  The email
referring to it may inaccurately paraphrase its terms, or there may be other provisions in the
Release that affect the so-called "representation and warranty."  Further, if unsigned, then any
representation allegedly made therein would be a nullity; if signed, one might very well expect
that this "Release" would release the claims Gorton now asserts.  Ashcroft, 129 S. Ct. at 1949
("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops
short of the line between possibility and plausibility of entitlement to relief.")

attorney's summary of what a certain provision of one preliminary draft of the Release was to

provide.  Iantosca v. Benistar Admin Svcs., Inc., 738 F. Supp.2d 212, 220 (D. Mass. 2010) ("To

satisfy [Fed. R. Civ. P. 9(b)], the complaint must, at a minimum, specify the time, place, and

content of the alleged false or fraudulent representations.").

**IV.      Gorton has failed to plead facts giving rise to a strong inference of scienter.**[13]

ACT has established that the Amended Complaint fails to allege a strong inference of

scienter.  (ECF No. 20 at 11-16.)  ACT addressed every allegation identified in the Amended

Complaint as supporting an allegation of scienter, and demonstrated how those allegations,

whether taken individually or collectively, fail to establish a strong inference of scienter under

First Circuit law.  (Id. at 12-16; ECF No. 4 at ¶¶ 63, 67.)[14]

Gorton has failed to respond specifically to any of ACT's arguments, and even concedes

that the alleged re-dating of the Engstrom warrant "may not have been motivated by an intent to

de-fraud Gorton."  (ECF No. 23 at 10-15.)  Instead, Gorton largely regurgitates his motive-and-

opportunity allegations, making the following principal arguments:

- ACT was motivated to hide the alleged "special treatment afforded to its
  insiders by the back-dating of the Engstrom warrant and the false
  reporting of the Woodward warrant price."  (ECF No. 23 at 13.)  This
  newly-minted theory has no basis.  There is no allegation in the Amended
  Complaint that Engstrom and Woodward were "insiders" whom ACT
  favored over others.  (See ECF No. 4 at ¶ 63 (intent-to-defraud allegations

---

[13] Gorton appears to argue that all scienter-related inferences must be drawn in his favor.  (ECF No. 23 at 10.)  To the contrary, this Court must consider and weigh all reasonable inferences drawn from the allegations of the Amended Complaint, including those favorable to ACT. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509-10 (2007).

[14] Gorton argues that ACT improperly isolated each scienter allegation and "engage[d] in a micro-analysis of each allegation."  (ECF No. 23 at 11.)  That is not so.  Gorton identified his specific scienter allegations in his Amended Complaint (ECF No. 4 at ¶¶ 63, 67), and ACT addressed each one of them (ECF No. 20 at 12-16).  He does not identify any other allegation in the Amended Complaint from which an inference of scienter can arise.  (ECF No. 23 at 10-15.)

concerning Engstrom); id. at ¶ 67 (same, concerning Woodward).)
Engstrom's employment was terminated in November 2004 (id. at ¶ 60,
Exs. L & M); Woodward was an ACT consultant (id. at ¶ 66) who Gorton
generally alleges "upon information and belief" (and without any
particularized facts) to have been somehow involved in ACT's recruitment
of Caldwell (id. at ¶ 67(h). Neither is alleged to be a favored insider.

- ACT was motivated to avoid adjusting Gorton's Warrant. (ECF No. 23 at
12.) This would be potentially relevant only if the Amended Complaint
alleged facts showing that either the Engstrom warrant or the amended
Woodward warrant had been issued during the Pricing Period. It does not.

- ACT was motivated to hide information from the SEC concerning the
Engstrom warrant. (ECF No. 23 at 13.) Gorton claims that ACT
somehow "misled the SEC," but the Amended Complaint provides no
well-pled or particularized facts supporting such an assertion. (See ECF
No. 4 at ¶ 63.) The Amended Complaint attaches alleged correspondence
between ACT and the SEC, but that alleged correspondence does not
reflect any asserted wrongdoing by ACT. (ECF No. 4-4, Exs. P & Q (pp.
5-11 of 17).)

- ACT was motivated to hide the "true facts" from nameless "other warrant
holders which [sic] could also demand adjustments to the their [sic] own
warrants based on the pricing of the Engstrom warrant." (ECF No. 23 at
13.) This argument has no basis with respect to the Engstrom warrant, as
no supporting allegation appears in the Amended Complaint. (See ECF
No. 4 at ¶ 63.) With respect to the Woodward warrant, all that is alleged
in the Amended Complaint is that other investors "would have raised
objections" because they received warrants with a share price of $2.53.
(Id. at ¶¶ 67(d)-(g).) There is no allegation that these investors could
have, would have, or have demanded an adjustment of their per-share
price.[15]

These motive-and-opportunity allegations are not supported by the Amended Complaint

and, in any event, are insufficient to generate a strong inference of scienter. Geffon v. Micrion

Corp., 249 F.3d 29, 36 (1st Cir. 2001) ("At the pleading stage, an allegation that defendants had

---

[15] Moreover, assuming these other investors received warrants from ACT at a per-share price of
$2.53, then these same investors would have been expected to object to the $2.20 Woodward
warrant, which was publicly disclosed shortly after it was issued. There is no such allegation,
however.

the motive and opportunity to make false or misleading statements is insufficient to support the 'strong inference' of scienter required after the PSLRA").[16]

Finally, Gorton argues that a "strong inference of scienter also is corroborated by the fact the public reporting of the Engstrom and Woodward warrants was materially incomplete and misleading." (ECF No. 23 at 14.)  The mere allegation of a misrepresentation does not constitute evidence of scienter.  A misrepresentation and scienter are two separate elements of Gorton's securities-fraud claim.  See Geffon, 249 F.3d at 34.  An allegation of a misrepresentation must be joined with allegations giving rise to a strong inference of scienter.  See Geffon at 35 (scienter requires more than "mere proof that the defendants knowingly made a particular statement"); Fenoglio v. Augat, Inc., 50 F. Supp.2d 46, 58 (D. Mass. 1999), aff'd 254 F.3d 368 (1st Cir. 2001) ("even if the . . . proxy statement issued jointly by [Defendant] contained misrepresentations . . . there is no evidence that it was issued with the requisite scienter").  Gorton has failed to plead particularized facts giving rise to a strong inference of scienter.

Further, there are no allegations that ACT made a misrepresentation with respect to either the Engstrom or the Woodward warrant that could be considered material to Gorton (or, for that matter, Aronson).  A misrepresentation would only be material to Gorton if it misrepresented or concealed an issuance of a stock warrant during the Pricing Period for a per-share price of less than $2.20, because any other issuance would not trigger any rights under Gorton's Warrant. Cooperman v. Individual Inc., 171 F.3d 43, 49 (1st Cir. 1999) ("The mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality

---

[16] Gorton argues that courts give plaintiffs "considerable latitude" in alleging scienter in cases involving the fraudulent backdating of stock options (ECF No. 23 at 12), but he offers no analysis of how this case involves fraudulent backdating – particularly in light of his admission that the re-dating of the Engstrom warrant was not fraudulent. (See ECF No. 20 at 13 n.11.)

requirement. Rather, information is 'material' only if its disclosure would alter the 'total mix' of facts available to the investor and 'if there is a substantial likelihood that a reasonable shareholder would consider it important' to the investment decision.").[17] There are no plausible allegations in the Amended Complaint showing that the Engstrom warrant or the Woodward warrant was issued during the Pricing Period for a per-share price of less than $2.20 (ECF No. 20 at 4-7, 8-11), and, therefore, there can be no reasonable inference of a material misrepresentation.

Accordingly, there are no allegations giving rise to a strong inference of scienter.[18]

**V.      Gorton concedes that his request for preliminary injunctive relief is meritless.**

Finally, ACT has demonstrated that Gorton's request for preliminary injunctive relief should be dismissed. (ECF No. 20 at 19-20.) Gorton failed to respond to this point, and, therefore, has conceded it.

## Conclusion

ACT respectfully requests that the Amended Complaint be dismissed with prejudice.[19]

---

[17] Thus, for example, Gorton's allegation that ACT misrepresented the issuance date of the Engstrom warrant as November 30, 2004, instead of April 1, 2005 (when Gorton alleges it was originally issued), could not as a matter of law be material to Gorton because both dates precede the Pricing Period. Cooperman, 171 F.3d at 49 ("if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality [it is] appropriate for the district court to rule that the allegations are inactionable as a matter of law").

[18] Gorton asks the Court to take judicial notice of pleadings and orders from other lawsuits in other courts. (ECF No. 23 at 13-14.) Gorton has cited no law suggesting that the Court may consider these other lawsuits, which do not involve the Engstrom or Woodward warrants, as evidence of scienter. His Amended Complaint fails to allege that these suits evince scienter.

[19] ACT hereby incorporates by reference the arguments its Co-Defendant, Wilmington Trust, N.A., the Administrator with Will Annexed of the Estate of William Mackay Caldwell, IV, Deceased, makes in its reply.

Dated: April 9, 2012                    Respectfully submitted,


                                        /s/ Benjamin L. Mack
                                        Andrew Gendron (admitted *pro hac vice*)
                                        Matthew R. Alsip (admitted *pro hac vice*)
                                        Venable LLP
                                        750 East Pratt Street, Suite 900
                                        Baltimore, Maryland 21202
                                        T: 410-244-7400
                                        F: 410-244-7742
                                        agendron@venable.com
                                        malsip@venable.com

                                        Jonathan L. Kotlier (BBO # 545491)
                                        Benjamin L. Mack (BBO # 661590)
                                        Nutter McClennen & Fish LLP
                                        Seaport West
                                        155 Seaport Boulevard
                                        Boston, Massachusetts 02210
                                        T: 617-439-2683
                                        F: 617-310-9683
                                        jkotlier@nutter.com

                                        *Counsel for Advanced Cell Technology, Inc.*


## CERTIFICATE OF SERVICE

        I hereby certify that, on April 9, 2012, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: April 9, 2012

                                        /s/ Benjamin L. Mack


310308/4

13