UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GARY D. ARONSON, et al.                      :
                                             :
    Plaintiffs,                              :
                                             :
                                             :   No. 1:11-CV-11492-NMG
v.                                           :
                                             :   (Consolidated with No.
ADVANCED CELL TECHNOLOGY, INC.,              :   1:11-cv-11515-NMG)
                                             :
    Defendant.                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

### ADVANCED CELL TECHNOLOGY'S
### RESPONSE TO PLAINTIFFS' OBJECTIONS TO REPORT
### AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS

Defendant Advanced Cell Technology, Inc. ("ACT"), by its undersigned counsel, responds to Plaintiffs' Objections to Report and Recommendation on Defendants' Motions to Dismiss (the "Objection") (ECF No. 48).  Fed. R. Civ. P. 72(b)(2).

### INTRODUCTION

Magistrate Judge Dein's Report and Recommendation (the "Report") (ECF No. 47) is an exhaustive, well-reasoned, and correct application of the law to the deficient allegations made by Plaintiffs Gary Aronson and John S. Gorton, as Trustee.  This Court should adopt the Report.

Plaintiffs attempted to allege that ACT committed federal securities fraud and breached the stock warrants it had issued to them by not disclosing its issuance of separate stock warrants to Gunnar Engstrom (a former ACT employee) and William Woodward (a former ACT consultant).[1]  In substance, Plaintiffs seek to argue that: (1) ACT issued the Engstrom and Woodward Warrants during the Pricing Period set forth in Plaintiffs' Warrants (May 1, 2005 –

---

[1] Aronson's and Gorton's warrants shall be referred to as "Plaintiffs' Warrants"; Gunnar Engstrom's warrant shall be referred to as the "Engstrom Warrant"; and William Woodward's warrant shall be referred to as the "Woodward Warrant."

January 15, 2009); (2) because the Engstrom and Woodward Warrants were allegedly issued during that Pricing Period, ACT was required to adjust the number and price of shares available for purchase under Plaintiffs' Warrants; (3) ACT failed to disclose the Engstrom and Woodward Warrants to Plaintiffs or effect an adjustment of Plaintiffs' Warrants; and (4) Plaintiffs suffered damage as a result.

Magistrate Judge Dein correctly found that Plaintiffs failed to state a claim for securities fraud, and also failed to state any claim for breach of contract respecting the Engstrom Warrant.[2] Among other things, Plaintiffs failed to allege any misrepresentation or a strong inference of scienter, or any facts showing that the Engstrom Warrant was issued during the Pricing Period.

Plaintiffs largely agree with the Report. They concede that their securities-fraud claims lack merit; at least, they do not object to dismissal of those claims.[3] (Objection at 2 ("Plaintiffs' objections are directed solely at the contractual claims, the Plaintiffs do not contest any of Magistrate Judge Dein's conclusions of law with respect to their claims arising under federal securities law.").) This concession respecting what had been Plaintiffs' core claims speaks volumes about their Objection.

Plaintiffs now argue, however, that Magistrate Judge Dein erred by concluding that they had failed to state a claim for breach of contract arising from the Engstrom Warrant. They assert six objections, all to the effect that the Engstrom Warrant was issued during the Pricing Period under Plaintiffs' Warrants. In some of those objections, Plaintiffs argue that there is a dispute of

---

[2]  Magistrate Judge Dein found that the breach-of-contract claim related to the Woodward Warrant could not be dismissed "[a]t this stage." (Report at 30.)

[3]  This concession waives any right to review of the Report respecting the securities-fraud claims. <u>Cortes-Rivera v. Dept. of Corrections and Rehab.</u>, 626 F.3d 21, 27 (1st Cir. 2010) ("a party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals") (citations omitted).

fact as to the issuance date; in others, they argue that they did in fact allege facts to support the inference that ACT issued the Engstrom Warrant during the Pricing Period.

Plaintiffs err. Plaintiffs failed to preserve five of their six objections; they are based on facts or argument not presented to Magistrate Judge Dein. As to the sixth, there is no relevant dispute of fact; and the facts they allege simply do not show that the Engstrom Warrant was issued during the Pricing Period. To the contrary, as Magistrate Judge Dein found, Plaintiffs' allegations and exhibits to their pleadings[4] show unequivocally that ACT issued the Engstrom Warrant not later than April 29, 2005, before the start of the Pricing Period. Because there is no plausible allegation that ACT breached Plaintiffs' Warrants by issuing the Engstrom Warrant, the Court should overrule Plaintiffs' one preserved objection and adopt the Report.

## ARGUMENT

Magistrate Judge Dein correctly found that Plaintiffs failed to state a claim for breach of contract with respect to the Engstrom Warrant. Plaintiffs' arguments to the contrary lack merit.

**I.   Nearly every one of Plaintiffs' six objections is based on an argument that was never presented to Magistrate Judge Dein.**

Most of Plaintiffs' arguments are brand new; they were never presented to Magistrate Judge Dein in the briefing of ACT's motions to dismiss. Specifically,

- In their first objection, Plaintiffs appear to argue that the question of whether a breach of contract occurred is necessarily a question of fact, and, therefore, not subject to a motion to dismiss. (Objection at 2.) Plaintiffs never made this argument before now.[5]

---

[4]   Exhibits to a pleading are considered part of the pleading "for all purposes." Fed. R. Civ. P. 10(c).

[5]   Plaintiffs previously argued, in the most general and conclusory fashion, that certain unidentified factual questions precluded dismissal of their contract claims (ECF No. 25 at 19 (1:11-cv-11492); ECF No. 23 at 18 (1:11-cv-11515)), but never made this specific argument.

- In their second objection, Plaintiffs argue that there was an "agreement to issue" the Engstrom Warrant on May 9, 2005, which allegedly triggered an adjustment to Plaintiffs' Warrants. (Objection at 3.) Plaintiffs never made this argument before now. In fact, in their memoranda opposing dismissal, Plaintiffs argued that ACT issued – not that it <u>agreed</u> to issue – the Engstrom Warrant on May 9, 2005:

> The fact these documents show ACT and Engstrom had reached an agreement to issue a warrant before the Pricing Period does not afford ACT a defense since [Plaintiffs' Warrants] required an adjustment whenever ACT "shall issue or agree to issue any Equity Unit" during the Pricing Period. While the pre-Pricing Period agreement to issue the warrant (<u>i.e.</u>, when ACT entered into the contract to issue the warrant) would not have required the adjustment, the post-Pricing Period issuance (<u>i.e.</u>, the actual release to Mr. Engstrom . . .) should have triggered an adjustment in the shares which ACT issued to [Plaintiffs] . . ..

(ECF No. 25 at 4-5 (1:11-cv-11492); ECF No. 23 at 5 (1:11-cv-11515).) Thus, before Magistrate Judge Dein, Plaintiffs tried to argue that the "agreement to issue" the Engstrom Warrant occurred before the Pricing Period, whereas the actual issuance occurred on May 9, 2005. Before this Court, they now attempt to argue that the agreement to issue the Engstrom Warrant occurred on May 9, 2005.

- In their fourth objection, Plaintiffs argue that their Warrants (which they concede are governed by Massachusetts law) should be interpreted in accordance with a 1964 California intermediate appellate decision, <u>Keller St. Devel. Co. v. Dept. of Investment, Div. of Corps.</u>, 227 Cal. App. 2d 760 (Cal. Ct. App. 1964), which interpreted a California statute. (Objection at 4-5.) Plaintiffs never made this argument before now.

- In their fifth objection, Plaintiffs appear to argue that May 9, 2005 was when ACT issued the Engstrom Warrant, because this was the date on which, they assert, ACT backdated the Engstrom Warrant. (Objection at 5-7.) Although Plaintiffs tried to argue before Magistrate Judge Dein that ACT had backdated the Engstrom Warrant (an argument that Magistrate Judge

4

Dein correctly found to be frivolous (Report at 13 n.7)), they did not argue that the date of the alleged backdating was also the date of issuance, as they appear to argue now.

- In their sixth objection, Plaintiffs argue that May 9, 2005 must be deemed the issuance date of the Engstrom Warrant because the alleged redating of the signature page required a revaluation of the value of the Engstrom Warrant under federal tax law. (Objection at 7.) Plaintiffs never made this argument before now.

Plaintiffs failed to make these new arguments before Magistrate Judge Dein and therefore failed to preserve them. Maurice v. State Farm Mut. Auto. Ins. Co., 235 F.3d 7, 10 (1st Cir. 2000) (affirming the district judge's adoption of the magistrate judge's report recommending dismissal of the action and overruling the plaintiff's objections as "procedurally defaulted," because the "law is clear that when a dispositive motion is heard before a magistrate judge, the movant must make all her arguments then and there, and cannot later add new arguments at subsequent stages of the proceeding"); Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 70 (D. Mass. 1998) (rejecting objections to the magistrate judge's report that were not made before the magistrate judge, because those objections had not been "fairly presented or preserved") (Saris, J.); Jardin de las Catalinas L.P. v. Joyner, ___ F. Supp. 2d ___, 2012 WL 1836367 at *3 (D.P.R. May 21, 2012) (parties may not seek review of a magistrate judge's report with respect to arguments never raised before the magistrate judge, because "parties must take before the magistrate judge, not only their best shot but all of their shots").[6]

Accordingly, because they were not preserved or presented to Magistrate Judge Dein, Plaintiffs' first, second, fourth, fifth, and sixth objections should be overruled.

---

[6] Internal citations and quotations are omitted from this Response unless otherwise noted.

**II.     Plaintiffs' new arguments would fail even if they had been preserved.**

Plaintiffs' first, second, fourth, fifth, and sixth objections would need to be overruled even if they had been preserved.

> A.     Objection One: that a breach-of-contract claim cannot be resolved on a motion to dismiss because it necessarily presents a question fact. (Objection at 2.)

This argument confuses the nature of a motion to dismiss. When resolving a motion under Fed. R. Civ. P. 12(b)(6), a trial court evaluates whether the plaintiff's allegations, when viewed in the plaintiff's favor, are legally sufficient to state a claim. Akar v. Fed. Nat'l Mort. Ass'n, 843 F. Supp. 2d 154, 162-63 (D. Mass. 2012) ("Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.") (Gorton, J., approving report and recommendation of Dein, Mag. J.). Thus, a motion to dismiss does not resolve <u>facts</u> at all, much less disputed facts; it evaluates the legal sufficiency of the plaintiff's assumed-to-be-true <u>allegations</u>.

This is exactly what Magistrate Judge Dein did here. (Report at 4 ("In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs.").) There is nothing in the Report suggesting that Magistrate Judge Dein strayed from the pleadings or resolved any factual dispute.

Magistrate Judge Dein construed the term "issue," as used in Plaintiffs' Warrants, to mean "[t]o send out or distribute officially." (Report at 25 (citing Black's Law Dictionary at 908 (9th ed. 2009)).)[7] Plaintiffs never argued that a different definition should apply. In fact, they

---

[7]     Under Massachusetts law, the Court is required to construe the term "issue" in its "usual and ordinary sense." Boland v. George S. May Int'l Co., 969 N.E.2d 166, 173 (Mass. App. Ct. 2012). Consulting dictionaries to define contract terms is an accepted practice under Massachusetts law. Suffolk Constr. Co., Inc. v. Illinois Union Ins. Co., 951 N.E.2d 944, 948 (Mass. App. Ct. 2011) ("[i]n the absence of case law, established dictionaries can furnish the approved natural meaning of disputed terms," and consulting Black's Law Dictionary (9th ed. 2009)) (cases cited therein); see Bukuras v. Mueller Group, LLC, 592 F.3d 255, 263 (1st Cir. 2010) (applying dictionary definitions to interpret contract terms under Massachusetts law).

never presented any legal authority supporting any particular definition of the term "issue." Nor do they now cite any law, or make any reasoned argument, that Magistrate Judge Dein's analysis or application of Black's Law Dictionary was erroneous. (Objection at 4-5.)

Based on Black's Law Dictionary – again, Plaintiffs advanced no definition of their own – Magistrate Judge Dein evaluated whether Plaintiffs' allegations stated a plausible claim for breach of contract respecting the Engstrom Warrant; i.e., whether the alleged facts generated a plausible claim that the Engstrom Warrant was issued (sent out or distributed officially) during their Pricing Period. (Report at 24-29.) Because Plaintiffs' own Exhibit M from their First Amended Complaints states that ACT sent out the Engstrom Warrant not later than April 29, 2005 (id. at 26), and because Plaintiffs alleged that the Pricing Period did not begin until May 1, 2005 (id. at 8), Magistrate Judge Dein properly concluded that ACT's issuance of the Engstrom Warrant could not have been a breach of Plaintiffs' Warrants. This conclusion was based on a plain interpretation of Plaintiffs' own allegations and exhibits, not on any resolution of disputed facts.

If, as Plaintiffs appear to argue, whether a contract has been breached is a factual question in all circumstances, then dismissal as a matter of law would never be appropriate. That, however, is not the law. As with any other cause of action, when the alleged facts fail to state a plausible claim for breach of contract, that claim is subject to dismissal on a preliminary motion. See, e.g., Vieira v. First Amer. Title Ins. Co., 668 F. Supp. 2d 282, 288 (D. Mass. 2009) ("In order to plead a viable breach of contract claim under Massachusetts law, plaintiffs must prove that a valid, binding contract existed, the defendant breached the terms of the contract, and

the plaintiffs sustained damages as a result of the breach. It is not enough to allege, in a conclusory fashion, that the facts demonstrate a breach of contract.") (Woodlock, J.).[8]

Accordingly, Magistrate Judge Dein concluded as a matter of law that Plaintiffs failed to state a breach-of-contract claim with respect to the Engstrom Warrant. Her ruling was correct.

> B. Objection Two: that ACT's alleged delivery of the redated Engstrom Warrant on May 9, 2005 was at least an "agreement to issue," if not an actual issuance. (Objection at 3.)

This argument not only contradicts Plaintiffs' argument before Magistrate Judge Dein (supra, p. 4); it contradicts their pleadings. Notwithstanding allegations that the "original issuance date" was April 1, 2005 (¶ 57), and exhibits (see Exhibit M) showing that the Engstrom Warrant was issued in April 2005, Plaintiffs allege in Paragraph 61 of their substantively identical First Amended Complaints that ACT "issued" the Engstrom Warrant on May 9, 2005.

Further, Plaintiffs fail to explain how the alleged events of May 9, 2005 could possibly constitute an "agreement to issue" the Engstrom Warrant. Nor can they. The only thing that occurred on that date, as alleged by Plaintiffs, is the alteration of the date on the signature page of the Engstrom Warrant, and the sending of that redated instrument to Engstrom. As Magistrate Judge Dein recognized (Report at 26), and as Plaintiffs previously argued (ECF No. 25 at 4-5 (1:11-cv-11492); ECF No. 23 at 5 (1:11-cv-11515)), the "agreement to issue" the Engstrom Warrant was made much earlier. It is undisputed that ACT agreed to issue the Engstrom Warrant not later than January 28, 2005, when ACT and Engstrom entered into a settlement agreement that required issuance of the Engstrom Warrant. (See ECF No. 20 (1:11-cv-11492), Exhibit 1.) January 28, 2005 was the date on which ACT agreed to issue the Engstrom Warrant.

---

[8] The lone case cited by Plaintiffs, Quinn v. Mar-Lees Seafood, LLC, 871 N.E.2d 511 (Mass. App. Ct. 2007), involves a motion for judgment notwithstanding a verdict, not a motion to dismiss, and does not hold that a court may not dismiss a complaint for breach of contract where, as here, the allegations do not show a breach.

Accordingly, the May 9, 2005 redating of the signature page cannot plausibly constitute an agreement to issue the Engstrom Warrant, let alone the issuance of that warrant.

    C.       Objection Four: that Magistrate Judge Dein should have interpreted the term "issue" in accordance with <u>dictum</u> contained in the 1964 California case of <u>Keller Street</u>, 227 Cal. App. 2d 760.  (Objection at 4-5.)

The parties agree that Massachusetts law applies to Plaintiffs' Warrants.  Yet Plaintiffs' objection four argues, for the first time, that the Court should look to a case issued by a California intermediate appellate court applying California law – at that, California statutory law. <u>Keller Street</u> held that a corporation was required under California statutory law to receive a permit from the State's Commissioner of Corporations in order to make its stock assessable.  227 Cal. App. 2d at 763-64.  The California statute in effect at that time required a permit for every "sale" of securities, and the statute defined "sale" to include "any change in the rights, preferences, privileges, or restrictions" related to securities.  <u>Id.</u>  <u>Keller Street</u> thus has no relevance to this case.  That court's interpretation of California statutes in an inapplicable context has nothing to do with Plaintiffs' Warrants.

Even if this Court were to interpret the term "issue," as used in Plaintiffs' Warrants, as the <u>Keller Street</u> Court determined the California legislature intended to use the term "sale" in a statute, the May 9, 2005 redating of the Engstrom Warrant's signature page would still not qualify as an issuance, or a sale, under Plaintiffs' Warrants.  Relying on <u>Keller Street</u>, Plaintiffs argue that there was a "material amendment" to the Engstrom Warrant made on May 9, 2005. (Objection at 5).  That contention is belied, however, by their allegations and exhibits.  With the exception of a redated signature page, the warrant sent to Engstrom on May 9, 2005 was <u>exactly the same</u> as the warrant sent to him in April 2005; all of the substantive terms remained the same, including the effective date of April 1, 2005.  (Report at 27.)  Any argument that the

9

events of May 9, 2005 constituted a "change in the rights, preferences, privileges, or restrictions" related to the Engstrom Warrant is simply frivolous.[9]

Accordingly, Magistrate Judge Dein did not err by failing to apply an uncited 1964 California case in interpreting Plaintiffs' Warrants.

> D. Objection Five: that redating the Engstrom Warrant's signature page on May 9, 2005 made May 9, 2005 the issuance date, because changing the date from April 1, 2005 to November 30, 2004 was securities "backdating." (Objection at 5-6.)

This argument is a non sequitur. Whether the redating of the signature page constituted fraudulent backdating has no bearing on whether the redating constituted an issuance of the Engstrom Warrant for purposes of requiring an adjustment to Plaintiffs' Warrants. There is no necessary or logical connection between these different concepts. Further, Plaintiffs have conceded that they have no claim for securities fraud. (Objection at 2.) Their post-facto attempt to bootstrap a breach-of-contract claim to their abandoned securities-fraud claims is spurious.

As Magistrate Judge Dein observed (Report at 13 n.7), Plaintiffs simply misunderstand the meaning of fraudulent backdating. Backdating does not occur whenever, as alleged here, a company changes the date on the signature page of a stock option or warrant. Fraudulent backdating occurs when parties agree to the terms of a stock option or warrant (the so-called "measurement date"), but select an earlier date when the stock price was much lower as the effective or grant date of the option and select the market price on the earlier date as the exercise price. By doing so, a company is able to confer a financial benefit on the recipient of the option while avoiding the need to recognize a compensation expense and pay the required taxes.

---

[9] Plaintiffs also briefly allude to the definitions of "sale" and "sell" under federal securities law. (Objection at 5.) Those definitions have no application here. Even if Plaintiffs' Warrants used the word "sell," instead of "issue," the mere redating of the signature page does not fall within the meaning of "sell" under federal law.

Here, the measurement date for the Engstrom Warrant was not later than January 28, 2005, the date of the settlement agreement between ACT and Engstrom fixing the number of purchasable shares and the per-share price. And the effective date of the Engstrom Warrant was and has always been April 1, 2005. Plaintiffs have never disputed either point.

Accordingly, even if backdating had any logical connection to the issuance date (it does not), there are no allegations that ACT backdated the Engstrom Warrant.

> E. Objection Six: that the May 9, 2005 redating of the Engstrom Warrant's signature page was an issuance because it triggered a revaluation under federal tax law. (Objection at 7.)

This is another non sequitur. Nothing in Plaintiffs' Warrants indicates that the term "issue" is in any way tied to or dependent upon provisions of the federal tax code; nor is there any necessary or logical connection. Further, Plaintiffs misconstrue the law. The tax provisions cited by Plaintiffs apply only to incentive stock options issued under a plan approved by stockholders. 26 U.S.C. § 422(b). Plaintiffs do not allege that the Engstrom Warrant was issued under any such plan.[10]

Plaintiffs also state the law out of context. They cite 26 U.S.C. § 424(h)(1), which provides, "if the terms of any option to purchase stock are modified . . . such modification shall be considered as the granting of a new option." However, they fail to cite 26 U.S.C. § 424(h)(3), which states that "modification" under Section 424(h)(1) means only a "change in the terms of the option which gives the employee additional benefits under the option." Plaintiffs do not allege that the mere redating of the signature page on the Engstrom Warrant provided Engstrom with any additional benefits (Report at 27), nor could they.

---

[10] Had this been alleged, it would have been another basis for dismissal. (See ECF No. 25 (1:11-cv-11492) at 7 n.2: "In some instances the securities were exempt from adjustment [under Plaintiffs' Warrants], such as issuance under the identified Stock Option Plans . . ..")

Accordingly, even if the concept had any relevance (it does not), there are no allegations that the redating of the Engstrom Warrant required a revaluation for tax purposes.

**III.     Plaintiffs' third objection, the only one they preserved, has no merit.**

Plaintiffs argue that there is a "genuine issue of material fact" respecting the Engstrom Warrant's date of issuance. (Objection at 3-4.) Plaintiffs base this argument on the May 9, 2005 letter from an attorney for ACT, Christopher Howard, to Engstrom, which is part of Exhibit M to their First Amended Complaints. They characterize this letter as acknowledging "that as of May 09, 2005 ACT was issuing Mr. Engstrom a new warrant to be effective only after he signed and returned said warrant." (Id.) This, however, mischaracterizes the letter, which states in full:

> Dear Gunnar:
>
> Enclosed for your execution is a revised Warrant. This Warrant is the same in all respects to the Warrant which you previously executed, with the exception of the date. The revised Warrant is dated November 30, 2004, the date of your termination [from ACT]. Please sign this Warrant and return a copy of the fully executed Warrant to me in the enclosed, self-addressed, stamped envelope. I would also appreciate it if you would return the incorrect warrant which you received on April 29, 2005.
>
> As always, please do not hesitate to call me with questions.
>
>                                           Very truly yours,
>                                                   /s/
>                                           Christopher E. Howard

Nowhere does this letter state that the Engstrom Warrant was to be effective only after it was signed and returned, as Plaintiffs now argue. (Objection at 4.)

There is also nothing in this letter suggesting that redating the Engstrom Warrant somehow interrupted or otherwise impaired the effectiveness of the Engstrom Warrant as issued in April 2005. Magistrate Judge Dein addressed this precise issue in the Report:

> [The re-dated Engstrom Warrant] did nothing more than replace the pre-existing Warrant with an identical version re-dated to reflect Engstrom's termination from

12

> employment. It did not alter any of Engstrom's rights under the Warrant, including his right to purchase stock beginning on April 1, 2005, and there are no allegations indicating that it otherwise impacted the effectiveness of the original Warrant. Because there is nothing in the record to suggest that the re-dating interfered with Engstrom's ability to exercise his purchase rights in April 2005, the plaintiffs have not alleged a plausible claim that the Engstrom Warrant was issued during the Pricing Period.

(Report at 27.) Plaintiffs have no response. Their bare allegation that ACT redated the signature page of the Engstrom Warrant, without any corresponding allegation that this had any impact whatsoever on the rights of either ACT or Engstrom, fails to generate a plausible claim that the Engstrom Warrant was issued during the Pricing Period.

Magistrate Judge Dein did not resolve any factual disputes in concluding that the Engstrom Warrant was issued before the Pricing Period. Magistrate Judge Dein simply reviewed the allegations made by Plaintiffs, and, assuming them to be true, correctly found that they fail to plausibly allege an issuance date during the Pricing Period. Plaintiffs' allegations and exhibits show an issuance date of April 29, 2005 at the latest.

## **Conclusion**

Plaintiffs' objections to Magistrate Judge Dein's Report are meritless. This Court should overrule their objections and adopt the Report.

Dated: August 27, 2012                          Respectfully submitted,

/s/ Jonathan L. Kotlier
Andrew Gendron (admitted *pro hac vice*)
Matthew R. Alsip (admitted *pro hac vice*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
T: 410-244-7400
F: 410-244-7742
agendron@venable.com
malsip@venable.com

>Jonathan L. Kotlier (BBO # 545491)
>Benjamin L. Mack (BBO # 661590)
>Nutter McClennen & Fish LLP
>Seaport West
>155 Seaport Boulevard
>Boston, Massachusetts 02210
>T: 617-439-2683
>F: 617-310-9683
>jkotlier@nutter.com
>
>*Attorneys for Advanced Cell Technology, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that, on August 27, 2012, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by first-class mail, postage prepaid.

>/s/ Jonathan L. Kotlier

2132054.1